```
                IN THE UNITED STATES DISTRICT COURT
                 FOR THE SOUTHERN DISTRICT OF OHIO
                          EASTERN DIVISION
```

Edward Antolak,                 :
                                    Case No. 2:12-cv-429
     Plaintiff,                 :
                                    JUDGE MICHAEL H. WATSON
v.                              :
                                    Magistrate Judge Kemp
Solid Rock Energy, Inc.,        :
et al.,

     Defendants.                :

                     REPORT AND RECOMMENDATION
                         I.  Introduction

This case was filed in the Belmont County Court of Common Pleas by Plaintiff Edward Antolak, an Ohio resident, against the Hess Corporation and Hess Ohio Resources, LLC, f/k/a Marquette Exploration, LLC (collectively, the "Hess Defendants"); and against Solid Rock Energy, Inc.; Chris Figge & Joanne C. Figge, as Trustees of the Chris & Joanne Figge Family Trust; Marquette ORRI Holding, LLC; Paul Kossky d/b/a Evergreen Consultants; Olds Investments, LLC; David R. Hill, Inc.; and Professional Oilfield Services, Inc.  This latter group of defendants will be referred to as the "Overriding Royalty Interest Defendants."  The complaint asserts four state law claims: two which seek a declaratory judgment that an oil and gas lease currently held by the Hess defendants has expired or has otherwise been terminated; one which alleges slander of title; and one for injunctive relief against any drilling on the property until the parties' rights have been clarified.  Count three of the complaint, the slander of title claim, specifically asks the Court to "remove the cloud upon [plaintiff's] title" which is being caused by the defendants' claimed interest in the lease.

Defendants removed the case to this Court under 28 U.S.C. §§1441 and 1446.  In their notice of removal, they acknowledged

that complete diversity of citizenship is lacking because some of the Overriding Royalty Interest Defendants, like Mr. Antolak, are citizens of Ohio, but argue that the citizenship of the Overriding Royalty Interest Defendants should be ignored for diversity purposes because those defendants were either fraudulently joined or are nominal parties.

Mr. Antolak has moved to remand this case to state court (Doc. #9) and that motion is fully briefed. It has been referred to the Magistrate Judge for the issuance of a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the following reasons, the Court will recommend that the motion to remand be granted.

## II. Factual Background

According to the complaint, Mr. Antolak is the owner of approximately 504 acres of property in Belmont County, Ohio. On August 17, 2006 Mr. Antolak signed an oil and gas lease with Solid Rock Energy, an Ohio Corporation. The initial term of the lease was for five years, but it contained provisions under which that term could be renewed. Sometime later, Solid Rock Energy assigned the lease to Marquette Exploration LLC, although Solid Rock Energy retained an overriding royalty interest in the lease. Solid Rock Energy then assigned 5.5% of its retained royalty interest to Paul Kosky, dba Evergreen Consultants, Joanne Figge 2005 Trust, Olds Investments, LLC, David R. Hill, Inc., and Professional Oilfield Service, Inc. Marquette Exploration LLC then assigned an overriding royalty interest to Marquette ORRI Holding, LLC.

On February 25, 2009, Marquette Exploration filed a "Declaration of Pooled Unit," which stated that 80.003 acres of Mr. Antolak's property were part of the pooled unit of the Pollock Well, a well drilled on property owned by a different landowner. Mr. Antolak received .03850712% of the royalties from that pooled unit from July 2009 through July 2011. No drilling

2

took place on Mr. Antolak's property during the leasehold term. On July 17, 2011, the Pollock Well was shut in. On August 17, 2011 the initial five-year term of the lease expired. On November 10, 2011, one of the Hess defendants notified Mr. Antolak by letter that the company had acquired the lease from Marquette Exploration.

Given these facts, Mr. Antolak takes the position that the lease has expired. He recognizes that Hess relies on pooling of his property with the Pollock Lease and the well drilled on that lease as grounds for extending his lease, but he alleges that the pooling clause did not extend the lease. As described above, the primary relief he seeks is a declaration that neither the Hess defendants nor any of the other defendants can claim any rights under the lease, including the right to develop the property for purposes of drilling for oil and gas or the right to receive royalties from the sale of oil and gas produced from his land.

### III. Discussion

28 U.S.C. §1441(a) provides that "any civil action brought in a State court which the district courts ... have original jurisdiction may be removed by the defendant ... to the district court of the United States for the district and division embracing the place where such action is pending." Of course, one of the most often-used bases for removing a case is that the district court would have jurisdiction based on diversity of citizenship, which exists "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and cost, and is between ... citizens of different states," see 28 U.S.C. §1332(a)(1), and that is the provision which the defendants relied on when they removed the case.

The parties do not appear to dispute that the amount in controversy requirement is met here. Obviously, however, they disagree on the significance of the fact - a fact which also appears to be undisputed - that complete diversity does not exist

3

here.  Consequently, the Court has jurisdiction only if the citizenship of the Ohio citizen defendants, all of whom are overriding royalty interest owners, can be disregarded. Defendants offer two theories on this issue: that the Overriding Royalty Defendants, as a group, were "fraudulently joined," or that they are "nominal parties."  If either of those contentions is accurate, the Court would be required to ignore the citizenship of those defendants for jurisdictional purposes, and because Mr. Antolak and the Hess defendants are citizens of different states, the Court would have jurisdiction over this case under §1332(a)(1).

### A.    Fraudulent Joinder

The first question is whether the doctrine of "fraudulent joinder" applies to Mr. Antolak's claims against the Overriding Royalty Defendants.  When deciding a motion to remand involving fraudulent joinder, the Court may "'pierce[] the pleadings' to consider summary-judgment-type evidence . . .," but "the proper standard for evaluating that evidence remains akin to that of a Rule 12(b)(6) motion to dismiss, and is arguably even more deferential."  Walker v. Philip Morris USA, Inc., 443 Fed. Appx. 946, 954 (6th Cir. 2011).  Contested issues of fact must be construed in the plaintiff's favor.  Id.

Fraudulent joinder is "a judicially created doctrine that provides an exception to the requirement of complete diversity." Coyne ex rel. Ohio v. American Tobacco Co., 183 F.3d 488, 493 (6th Cir. 1999). quoting Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998).  A claim of "fraudulent joinder," while not necessarily implying actual fraudulent conduct on the plaintiff's part, does involve an assertion that the resident defendant was joined solely, and without any legal basis, for the purpose of defeating the other defendants' right to remove the case on diversity grounds.  The non-moving party's motive for joining the non-diverse party to the lawsuit, however,

4

is "immaterial" when determining fraudulent joinder. See Jerome-Duncan, Inc. v. Auto-By-Tel, L.L.C., 176 F.3d 904, 907 (6th Cir. 1999). Rather, the Court must perform a type of qualitative analysis of the claims asserted against the non-diverse defendants, and do so using an objective standard.

As one might suspect, the law relating to this aspect of removal jurisdiction is stringent, and it requires removing defendants to do more than simply demonstrate that the non-diverse defendants might be able to prevail on a Rule 12(b)(6) motion to dismiss. A standard that loose would result in the removal of large numbers of cases where the parties are not completely diverse, and require a federal court to determine the merits of claims that are not really within its jurisdiction. In a case where a defendant claims fraudulent joinder, the question is whether there is "arguably a reasonable basis for predicting that the state law might impose liability on the facts involved." Alexander v. Electronic Data Sys. Corp., 13 F.3d 940, 949 (6th Cir. 1994), quoting Bobby Jones Garden Apartments, Inc. v. Suleski, 391 F.2d 172, 176 (5th Cir. 1968). In other words, "[f]raudulent joinder occurs when the non-removing party joins a party against whom there is no colorable cause of action" Saginaw Hous. Comm'n v. Bannum, Inc., 576 F.3d 620, 624 (6th Cir. 2009). Thus, in deciding whether diversity jurisdiction exists here, the Court's task is limited to determining whether the complaint states any claim against the Overriding Royalty Defendants that is even arguably permitted under state law.

Here, defendants have conceded that the interest of the Overriding Royalty Interest Defendants "rises and falls with the interests of the Hess Defendants." (Doc. #1, p. 8). A judgment issued by this Court declaring that the lease is null and void affects not only the Hess Defendants but also the Overriding Royalty Interest Defendants, because the only way that they can receive the royalties in which they claim an interest is under

5

this particular lease.  See XAE Corp. v. SMR Property Management Co., 968 P.2d 1201, 1206 (Okla. 1998)("An overriding royalty is an interest in the oil and gas lease out of which it is carved, and cannot be a property interest of greater dignity than the lease itself").  Thus, even if the complaint did not directly state a claim against the overriding royalty interest owners, if the Court declared the lease invalid or expired, it would terminate their interests.

However, the complaint does not seek relief only against the Hess defendants as the current owners (or purported owners) of the working interest.  As the Court's previous description of the complaint indicates, Mr. Antolak has alleged that the claims of all of the defendants create a cloud on his title which he seeks to have removed.  An action will lie against an overriding royalty interest owner to remove a cloud on the landowner's title.  See, e.g., Edwards v. Prince, 719 P.2d 422 (Mont. 1986)("Plaintiffs [landowner] brought this action to cancel overriding royalties ... alleging a cloud on plaintiff's royalty title"); La Laguna Ranch Co. v. Dodge, 114 P.2d 351 (Cal. 1941)(quiet title action brought by landowners against overriding royalty interest owners).  There is no reason to believe that Ohio law is different or that it does not permit such an action to be filed against overriding royalty interest owners.  Thus, the complaint states a colorable claim for declaratory relief or to quiet title against the Overriding Royalty Interest owners.

The defendants do not really refute this point.  Rather, they argue that the Overriding Royalty Interest Defendants are not indispensable parties and therefore need not be joined in this action. However, the question is not whether they are indispensable parties but whether they are proper parties against whom a colorable claim has been alleged.  It is clear that the presence of proper non-diverse parties can destroy diversity. See Schuckman v. Rubenstein, 164 F.2d 952, 956 (6th Cir. 1947).

Given their interest in the lease dispute, the Overriding Royalty Interest Defendants are proper parties.

It can also be helpful, in analyzing whether a claim for declaratory relief has been stated against a party, to ask whether that party would have a valid claim for affirmative relief running back toward the plaintiff in the declaratory judgment action.  Here, Mr. Antolak would be a proper party had the Overriding Royalty Interest Defendants brought suit against him for breach of his agreements under the lease.  See GM Gas Exploration, Inc. v. McClain, No. 1438, 1991 Ohio App. LEXIS 4083 (Athens County August 13, 1991)(allowing overriding royalty interest holder to recover from landowner where landowner refused to permit access to the well).  Thus, there are claims available both to Mr. Antolak and to the Overriding Royalty Interest Defendants which Ohio law would arguably recognize.

Defendants do argue that "neither Antolak or the Overriding Royalty Interest Defendants have any viable claims against each other as a result of the instant lease dispute." (Doc. #12, p. 7).  To support their argument, they cite to 2-4 Williams & Meyers, Oil and Gas Law §419, which states that "[t]he overriding royalty has no claim of any kind against the landowner ... if the lease is extinguished" and that "[t]he remedy of the owner of the override, if any, should be against the owner of the working interest at the time of the creation of the override or at the time of its extinguishment."  While these may be true statements, they are not applicable here.  The position taken by all of the defendants, including the Overriding Royalty Interest Defendants, is that the lease is *not* extinguished.  If that is so - and some court will, in the context of this declaratory judgment action, decide that exact question - all of the defendants would have claims against Mr. Antolak were he to keep them from developing the property.  Under those circumstances, the Overriding Royalty Interest Defendants' claim would not be limited to an action

7

against the Hess Defendants but would include a claim against Mr. Antolak.

For all of these reasons, the Court concludes that Mr. Antolak has stated at least a colorable claim against the Overriding Royalty Interest Defendants to remove a cloud on his title and to declare their interests void. Because that is so, the fraudulent joinder doctrine does not allow the Court to disregard the Ohio citizenship of these non-diverse parties.

B. Nominal Parties

The defendants also argue, in the alternative, that the Overriding Royalty Interest Defendants are nominal parties whose citizenship can be disregarded. This argument is equally unavailing.

It is true, of course, that "'citizens' upon whose diversity a plaintiff grounds jurisdiction must be real and substantial parties to the controversy." Navarro Sav. Ass'n v. Lee, 446 U.S. 458, 460 (1980). Federal courts should "disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy." Id. at 461 (citations omitted). "'The real party in interest is the person who is entitled to enforce the right asserted under the governing substantive law.'" Maiden v. N.A. Stainless, L.P., 125 F. App'x 1, 3 (6th Cir. 2004) (unpublished), quoting Certain Interested Underwriters at Lloyd's of London v. Layne, 26 F.3d 39, 42-43 (6th Cir. 1994). "In contrast to a real party in interest, a formal or nominal party is one who, in a genuine legal sense, has no interest in the result of the suit or no actual interest or control over the subject matter of the litigation." Rose v. Giamatti, 721 F.Supp. 906, 914 (S.D. Ohio 1989) (internal quotation marks and citations omitted).

Defendants argue this case is similar to the case of Rose v. Giamatti, supra, a case in which the real controversy was between Pete Rose, a major league baseball player, and Bart Giamatti, the

8

Commissioner of Major League Baseball.  That case was originally filed in state court in Cincinnati against not only Commissioner Giamatti but Major League Baseball, an unincorporated association, whose members included two Ohio citizens, the Cincinnati Reds and the Cleveland Indians.  Mr. Rose alleged, in his complaint, that the Commissioner had denied him the right to a fair hearing in front of an unbiased decision maker regarding allegations that Mr. Rose had bet on baseball.  This Court, per Judge John D. Holschuh, found that the Cincinnati Reds and Major League Baseball were "at best, nominal parties" because while they had some interest in the outcome of the proceedings, they were not directly accused of any alleged wrongdoing.  Id. at 915-922, 923.  The member clubs of Major League Baseball, having delegated substantial power to the Commissioner, had no control over the proceedings at issue and were therefore simply "neutral bystanders" or, in legal parlance, nominal parties.  Id. at 921.

Here, the Overriding Royalty Interest Defendants can hardly be described as neutral bystanders.  They have more than a passing interest in this case.  Mr. Antolak is asking this Court to declare the lease invalid, void, and unenforceable. If he succeeds, all of the rights the Overriding Royalty Interest Defendants have to a percentage of the proceeds of oil and gas produced from is property would be wiped out.  While it may be true that the Mr. Antolak has not alleged any wrongdoing against the Overriding Royalty Interest Defendants, he has asked a court to declare that their rights, which included a claim to royalties from oil and gas produced on his land, are no longer valid. Stated differently, Mr. Antolak is trying to prevent, by declaratory judgment, the Overriding Royalty Interest Defendants from bringing an action against him for preventing continued exploration on his land, or a future action for payment of royalties on any oil and gas which is produced.  Thus, defendants have not met their burden of demonstrating that the Overriding

Royalty Interest Defendants are nominal parties.

## IV. Conclusion

For all of the reasons set forth above, the Court concludes that the Overriding Royalty Interest defendants were not fraudulently joined and that they are not nominal parties. Therefore, the Court recommends that the plaintiff's motion to remand this case to the Court of Common Pleas of Belmont County, Ohio (Doc. #9) be granted and that the action be remanded to that Court based on lack of subject matter jurisdiction.

## V. Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See Thomas v. An, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp
United States Magistrate Judge