# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| Edward Antolak, | : | |
| | | Case No. 2:12-cv-429 |
| Plaintiff, | : | |
| | | JUDGE MICHAEL H. WATSON |
| v. | : | |
| | | Magistrate Judge Kemp |
| Solid Rock Energy, Inc., et al., | : | |
| Defendants. | | |

## OPINION AND ORDER

This oil and gas case, involving competing claims to mineral interests, was filed in the Belmont County Court of Common Pleas by an Ohio resident and removed by the defendants on the ground that this Court has diversity of citizenship jurisdiction under 28 U.S.C. § 1332(a). There are, however, named defendants who claim overriding royalty interests in the property in question and who are, like the plaintiff, citizens of Ohio. Based on that fact, plaintiff Edward Antolak moved to remand the case to state court, and a Magistrate Judge has recommended granting his motion. Objections to that recommendation have been filed. For the following reasons, the Court **OVERRULES** the objections and **GRANTS** the motion to remand.

## I. STANDARD OF REVIEW

When objections are received to a Magistrate Judge's Report and Recommendation on a dispositive matter, the assigned District Judge "shall make a de novo determination ... of any portion of the magistrate judge's disposition to which specific written objection has been made ...." Fed. R. Civ. P. 72(b). After review, the

District Judge "may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions." *Id.;* see also 28 U.S.C. § 636(b)(1)(B). General objections are insufficient to preserve any issues for review; "[a] general objection to the entirety of the magistrate's report has the same effects as would a failure to object." *Howard v. Secretary of Health and Human Services,* 932 F.2d 505, 509 (6th Cir. 1991).

## II. BASIC BACKGROUND

The Objections, ECF No. 23, do not dispute the background of the case as set forth in the Report and Recommendation, so the Court need only briefly summarize the key facts here.

This case involves some 504 acres of land located in Belmont County. In 2006, Mr. Antolak leased the oil and gas rights under that land to Solid Rock Energy. The lease term was, as is typical in the oil and gas industry, for a set number of years (five in this case), with provisions for extending the lease if certain events — primarily development of the mineral interests — occurred during the initial term.

As is also typical, Solid Rock Energy assigned the lease but kept an overriding royalty interest in the proceeds of any sale of oil and gas from the property. It then assigned some of its overriding royalty interest to other companies or individuals. The initial assignee of the lease, Marquette Exploration, LLC, also carved out some overriding royalty interests, and at some point assigned the balance of its interest in the lease to one or the other of the Hess defendants. These various assignments mean, for jurisdictional purposes, that out-of-state entities (the Hess defendants) are now the assignees of the lease (assuming it is still valid), but that some Ohio entities or

individuals own some of the overriding royalty interests. No one disputes these basic facts. The parties do dispute whether the pooling of some of Mr. Antolak's property with an adjacent propery, the drilling of a well on the adjacent property, and Mr. Antolak's receipt of some royalties from that well, extended the term of his lease, but that is the merits question and not the jurisdictional issue.

### III. JURISDICTION

In their objections, defendants also do not take issue with the way in which the Report and Recommendation describes the relevant jurisdictional precepts, including the requirements of removal jurisdiction generally — that is, that in order for a case to be removable, the case must be one over which this Court would have had jurisdiction had it been filed here initially, see 28 U.S.C. §1441(a) — and the principle that the citizenship of non-diverse parties can be disregarded for jurisdictional purposes if those parties have been "fraudulently joined" or are merely "nominal parties." See, e.g., Alexander v. Electronic Data Sys. Corp., 13 F.3d 940, 949 (6th Cir. 1994). See Objections, ECF No. 23, at 3 ("the Magistrate Judge correctly states the law regarding fraudulent joinder and nominal parties ..."). Defendants argue, however, that on the key issue of whether the overriding royalty owners are either fraudulently joined or nominal parties, the Report and Recommendation "incorrectly concludes that the holders of the overriding royalty interests in this case have been properly joined and are real-parties-in-interest." Id. The linchpin of their argument appears to be their assertion that "at most the Overriding Royalty Interest Defendants hold a contingent interest in the outcome." Id. at 2. The Court's discussion will therefore focus on that issue.

The Report and Recommendation reasoned as follows. First, it noted that courts

have held that "'[f]raudulent joinder occurs when the non-removing party joins a party against whom there is no colorable cause of action.' Saginaw Hous. Comm'n v. Bannum, Inc., 576 F.3d 620, 624 (6th Cir. 2009)." *Report and Recommendation*, ECF No. 22. This prompted a second question: Does a landowner claiming invalidity of an oil and gas lease have a colorable claim for relief against overriding royalty interest holders whose rights depend on the continuing validity of the lease? The Report and Recommendation answered this question yes based on two facts: first, the concession by the defendants that "the interest of the Overriding Royalty Interest Defendants 'rises and falls with the interests of the Hess Defendants,'" *Report and Recommendation,* at 5, *quoting Notice of Removal,* ECF No. 1, at 8; and, second, various court decisions indicating that, indeed, a landowner has not just a colorable but a perfectly valid cause of action (an action to quiet title) against overriding royalty interest owners in exactly this situation. *See, e.g., Edwards v. Prince,* 719 P.2d 422 (Mont. 1986); *La Laguna Ranch Co. v. Dodge,* 114 P.2d 351 (Cal. 1941). This reasoning process ended with the conclusion that "the complaint states a colorable claim for declaratory relief or to quiet title against the Overriding Royalty Interest owners," *Report and Recommendation,* at 6, a conclusion inconsistent with a finding that the overriding royalty interest owners were fraudulently joined.

Defendants make two separate arguments as to why this conclusion is wrong. First, focusing on the complaint's prayer for injunctive relief, they contend that because the Hess defendants are the only parties with a claim to the working interest in the lease, only they can assert a right to develop the property, and an injunction running solely against the overriding royalty interest owners would accomplish nothing.

Whatever the merits of this argument may be, it seems irrelevant because the Report and Recommendation did not determine that Mr. Antolak had any colorable claim for injunctive relief against the overriding royalty interest owners as it relates to exploiting the oil and gas underlying the property.

Defendants' second argument is more to the point. After recognizing that, in Ohio, a party may bring an action to quiet title, they assert that in Ohio, "a quiet title action to remove [a cloud on title] can only be brought against an adverse claimant to the plaintiff's title." Objections, at 6, citing Maasen v. Zopff, 1999 WL 552747 (Warren Co. App. July 26, 1999). They then argue that overriding royalty interest owners are not adverse claimants to the plaintiff's "surface property interests" because those owners are not in privity with the surface owner, Mr. Antolak. According to defendants, "only the Antolak Lease can be the subject of a quiet title action" and because the overriding royalty interest owners acquired their interests not through the lease itself, but by way of separate and subsequent agreements with either the Hess defendants or their predecessors in interest, Mr. Antolak has no viable quiet title claim against those royalty owners. Id. They do not, however, cite any authority which so holds, limiting the balance of their argument to distinguishing the cases cited in the Report and Recommendation on the ground that, in those cases, the primary leasehold interest had been terminated, but the overriding royalty interest owners refused to concede that their interests had been terminated as well, forcing the landowner to sue them in order to obtain clear title to the mineral interests.

It is not clear from defendants' argument exactly how the concept of privity (in this case, privity of estate) is related to the question of who can be sued in a quiet title

action. In *Campbell v. Nako Corp.*, 198 Kan. 421 (1967), the Kansas Supreme Court rejected the proposition that because there is no privity of estate between a landowner and an overriding royalty owner, the latter lacked standing to defend an action to terminate the underlying lease. Rather, that court held that although the overriding royalty interest owners could not directly enforce any covenants in the lease against the landowner due to lack of privity, "they should not be precluded from defending an action brought by the landowners to declare the lease forfeited and cancelled." *Id.* at 429. There, the working interest owner failed to defend the case, in which, as here, the claim was made that the lease expired for lack of production, and the lease was terminated as a result. The overriding royalty interest owners had been joined as defendants as well but did not get actual notice of the pendency of the case. When they learned of the default, they moved to reopen the case in order to permit them to show that the property was being developed appropriately; the landowners claimed that they had no standing to raise that issue. However, because the royalty interest owners' rights were completely dependent on the outcome of that inquiry, they were, in the court's view, entitled to defend the case (and their interests) on that ground. Privity was simply not a bar to the litigation of the question of the validity of their rights — just as it would not be here — nor was there any suggestion that the landowner had not properly joined them or had not asserted a proper claim against them.

It follows from the decision in *Campbell* that landowners and overriding royalty interest owners can be adverse to each other with respect to title issues. They are here; Mr. Antolak claims he owns 100% of the oil and gas interests, including the right to 100% of any royalty payments, whereas the overriding royalty interest owners very

much dispute that claim. It may be that in most situations, the overriding royalty interest owners are content, when the working interest owner is in the picture, to allow that party to take the lead in defending on the issue of whether the property has been developed sufficiently to extend the lease term, but that does not mean either that the overriding royalty interest owners have no stake in the outcome — they clearly do — or no legal ability to defend their interests as against the landowner who is trying to terminate the lease. And if they have standing to defend their interests, they are proper subjects of an affirmative claim for relief. At the very least, there is a substantial argument to be made that Mr. Antolak's claim against them is a proper one under Ohio law, and that is all that is needed to support the conclusion that they were not fraudulently joined.

Alternatively, defendants argue that the overriding royalty interest owners are only nominal parties, and that even if they were not fraudulently joined, their citizenship may still be disregarded for jurisdictional purposes. As the Report and Recommendation recognized, this Court, in *Rose v. Giamatti*, 721 F.Supp. 906, 914 (S.D. Ohio 1989), stated that a "nominal party is one who, in a genuine legal sense, has no interest in the result of the suit or no actual interest or control over the subject matter of the litigation." Defendants argue that the overriding royalty interest owners meet this definition because they have no control over the subject matter of the case. That is so, say the defendants, because "[a]s the current Lessee, Hess Ohio will lead the defense, and the Overriding Royalty Interest Defendants, who are not parties to the Antolak Lease, will take a 'back seat.'" *Objections,* at 8. Defendants cite to *Broyles v. Bayless*, 878 F.2d 1400 (11th Cir. 1989) for the proposition that just because a party has a financial stake in the outcome of a case, that party may still be considered "nominal" if it

is not a real party in interest.

First, it seems odd that a group of defendants' unilateral and non-binding decision about which of them will take the lead in defending a case, and which will occupy the "back seat," should be dispositive as to the question of the Court's jurisdiction. Circumstances could change; as in *Campbell*, the working interest owner (here, Hess Ohio) might, for one reason or another, lose interest in or become unable to defend the case, thus promoting the overriding royalty interest owners to a "front seat" position. Would that change in circumstances then vest the Court with jurisdiction where it was lacking before? It seems clear that it would not. It seems equally clear that a concept such as jurisdiction must be firmly anchored to more objective concepts, such as whether the alleged nominal party has a stake in the outcome of the case and has the legal right to defend against the plaintiff's claim. The overriding royalty interest owners possess both of these attributes.

Second, the Court does not find the *Broyles* decision to be at odds with this approach. There, the victim of an automobile accident, a Tennessee resident, sued the alleged tortfeasor, a Georgia resident, in federal court, claiming jurisdiction based on diversity of citizenship. The plaintiff also had underinsured motorists' coverage under his own auto policy, and, as required by Tennessee law, he served the insurer, also a citizen of Tennessee, with a copy of the complaint and summons. That company's motion to dismiss for lack of jurisdiction was granted. On appeal, the Appeals Court reversed, finding that the purpose of the Tennessee statute was to place an underinsured or uninsured carrier in the same position as the tortfeasor's insurer but not to make that carrier a real party in interest in the case. The court cited to the usual

test for determining who is a real party in interest — the same test articulated in *Rose v. Giamatti* — but noted that this definition "breaks down in the area of insurance law because of the courts' historic treatment of insurance companies in tort litigation." *Broyles*, 878 F.2d at 1403-04. The court observed that even a tortfeasor's actual insurer — and not just a mandatorily-joined uninsured or underinsured carrier — typically has both a real and substantial stake in the outcome of the case and the practical ability to control the defense, but it is nonetheless not treated as a party. The court explained why, stating that

> Because of the indirect and invisible roles often played by insurance companies in tort litigation, courts generally do not recognize these companies as real parties to an action unless they have become subrogated to the rights of their insured after payment of the loss, they are defending actions brought directly against them, or when, for some reason, they must assume primary and visible control of the litigation.

*Id.* at 1404. The court justified this "paradoxical treatment" of insurers as stemming from both the somewhat contingent nature of their interest in the case and "the recognition that jurors will be much more inclined to award high damages to an injured party if they are aware that an insurance company will ultimately bear the burden of the award." *Id.* Finally, the court noted that when underinsured coverage is at stake, the insurer's interest is doubly contingent, because the plaintiff must prove liability, recover an amount more than the limits of the tortfeasor's policy, and prove coverage under his own policy in order to recover any benefits. For all those reasons, the court denied real party in interest status to the insurer.

Obviously, little, if any, of the *Broyles* court's reasoning applies here. The traditional test for determining nominal parties does not "break down" when being

applied to overriding royalty interest owners; the policy reasons which justify treating liability insurers as "shadow parties" do not exist here. Nor do the overriding royalty interest owners lack either a direct interest in the outcome or the legal inability to control the defense. They can choose, at any time, to assert any defense to Mr. Antolak's claim, whether the Hess defendants choose to assert that defense or not, and there is only one legal issue — the continued validity of the lease — which defines their interest, not multiple issues such as liability of a third party and the potential amount of recovery. In short, the Court finds *Broyles* to be wholly inapposite.

The only other authority cited by defendants on this issue is a decision from the Louisiana Supreme Court, *Fontenot v. Sun Oil Co.*, 257 La. 642 (1971). That decision does not, of course, involve any question of federal court jurisdiction. Rather, the question presented there was whether, under Louisiana law, overriding royalty interest owners whose rights had been affected by an adverse judgment against the working interest owner were required to join in the working interest owner's appeal, which resulted in a partial restoration of the working interest. The landowner took the position that even though the working interest which was subject to those overrides was not ultimately invalidated, the working interest owner should not have paid royalties to any royalty owners who failed to appeal, but should have paid that money to the landowner instead.

In rejecting this argument, the *Fontenot* court first recognized that the initial joinder of the royalty owners in the suit seeking cancellation of the lease was proper —as, indeed, it was in this case. As to the precise issue presented, the court held that because the overriding royalty owners' interest was wholly derived from the underlying

lease, once that lease was found to be valid, there was no legal basis for terminating the overrides; the judgment which did so "necessarily became ineffective" when it was reversed on appeal. *Fontenot*, 257 La. at 652. The court based its conclusion on the fact that the rights of all the defendants, both those who appealed and those who did not, were simply so interwoven as to be inseparable. The court acknowledged, but did not explicitly adopt, the argument that the overriding royalty owners were nominal parties, and in any event did not purport to apply the applicable federal law test to that question or to resolve it. As with the *Broyles* decision, nothing in *Fontenot* to suggest that overriding royalty interest owners are so completely divorced from the outcome of a case directly attacking their right to royalty payments so as to render their presence in the case largely a matter of form rather than one of substance. Thus, they cannot be treated as "nominal parties," and their citizenship cannot be disregarded for diversity purposes. Their presence in the case defeats diversity jurisdiction.

## IV. CONCLUSION

For the reasons set forth in this Opinion and Order, and following a *de novo* review of the Report and Recommendation, ECF No. 22, the objections of defendants Hess Corporation and Hess Ohio Resources, LLC, ECF No. 23, are **OVERRULED**, and the Report and Recommendation is **ADOPTED AND AFFIRMED**. Plaintiff's motion to remand, ECF No. 9 is **GRANTED**. This case is **REMANDED** to the Court of Common Pleas of Belmont County, Ohio.

**IT IS SO ORDERED.**

MICHAEL H. WATSON, JUDGE
UNITED STATES DISTRICT COURT